1

2

3                                                                O

4

5                                                      JS - 6

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11   ILLEGAL ALIENS, LLC,           )  Case No. CV 14-07502 DDP (ASx)
                                     )
12                  Plaintiff,       )
                                     )
13        v.                         )  **ORDER GRANTING MOTION TO REMAND**
                                     )  **AND DENYING MOTIONS TO DISMISS**
14   NORTH AMERICAN SPECIALTY        )
     INSURANCE COMPANY; WELLS        )
15   FARGO INSURANCE SERVICES        )
     USA, INC.; ABACUS INSURANCE     )  [Dkt. Nos. 26, 28, 32]
16   SERVICES, INC.,                 )
                                     )
17                  Defendants.      )
     _____ )
18

19        Presently before the Court are Plaintiff Illegal Aliens, LLC

20   ("Illegal Alien")'s Motion to Remand (Dkt. No. 26); Defendant Wells

21   Fargo Insurance Services USA, Inc. ("Wells Fargo")'s Motion to

22   Dismiss (Dkt. No. 28); and Defendant Abacus Insurance Brokers, Inc.

23   ("Abacus")'s Motion to Dismiss (Dkt. No. 32).  Having considered

24   the parties' submissions, the Court GRANTS the Motion to Remand.

25   **I.  BACKGROUND**

26        Plaintiff Illegal Aliens is a California limited liability

27   company that, in October 2010, was producing a feature film (the

28   "Film").  (Notice of Removal, Dkt. No. 1, ¶ 22; First Amended

1   Complaint ("FAC"), Dkt. No 21, ¶ 5.)  Defendant North American

2   Specialty Insurance Company ("NAS") is a New Hampshire corporation

3   doing business as an insurance company.  (Notice of Removal ¶ 21.)

4   Defendant Wells Fargo is a North Carolina company doing business as

5   an insurance brokerage.  (Id. ¶ 23.)  Defendant Abacus is a

6   California corporation doing business as an insurance broker.  (FAC

7   ¶ 1.)

8      This suit arises out of injuries sustained by a driver on the

9   set of the Film produced by Illegal Aliens.  In October 2010,

10   Illegal Aliens alleges that it approached Wells Fargo to procure

11   insurance for Illegal Aliens and its vendors for the production of

12   the Film.  (Id. ¶ 5.)  Illegal Aliens alleges that Wells Fargo then

13   engaged Abacus as an insurance broker.  (Id.)  After obtaining

14   information regarding the production, Abacus then engaged NAS to

15   provide insurance, and delivered two insurance policies to Illegal

16   Aliens.  (Id.)  The policies allegedly insured Illegal Aliens for

17   all damages due to bodily injury during the course of production of

18   the Film, and further provided that NAS would defend Illegal Aliens

19   in any action alleging bodily injury.  (Id.)

20      During the filming of the movie, Colin McKay claimed to have

21   suffered bodily injuries while performing services for Illegal

22   Aliens on the set of the Film.  (Id. ¶ 6.)  Argonaut Insurance

23   Company ("Argonaut") provided compensation to McKay for his

24   injuries.  (Id. ¶ 7.)  In or around December 2012, Argonaut sued

25   Armytrucks, Inc. ("Armytrucks") and Illegal Aliens in Los Angeles

26   Superior Court to claim indemnity for the compensation Argonaut

27   paid to McKay.  (Id.)  On or about October 23, 2013, McKay filed a

28

1    separate personal injury lawsuit against Illegal Alien for his

2    bodily injuries.  (Id. ¶ 8.)

3        NAS was given written notice of both actions, but it denied

4    liability under the insurance policies and refused to undertake

5    defense on Illegal Aliens' behalf.  (Id. ¶ 10.)  As a result,

6    Illegal Aliens alleges, it incurred substantial costs in having to

7    defend itself in both actions.  (Id. ¶ 12.)

8        In its Notice of Removal and in its opposition, NAS points out

9    that Illegal Aliens first filed suit against NAS only (the "First

10   Action"), arguing that NAS should have provided coverage under the

11   insurance policies.  In that First Action, Illegal Aliens asserted

12   three causes of action against NAS:  breach of contract, breach of

13   the implied covenant of good faith and fair dealing, and

14   declaratory relief.  (Notice of Removal ¶¶ 1-2.)  Illegal Aliens

15   did not sue either Wells Fargo or Abacus in the First Action.

16   (Id.)  On August 1, 2014, a few days after NAS removed the First

17   Action to federal court, Illegal Aliens voluntarily dismissed its

18   complaint.  (Id. ¶ 5.)  On August 25, 2014, Illegal Aliens filed

19   the present action in state court, asserting the same three causes

20   of action against NAS and adding a fourth cause of action for

21   negligence against additional defendants Wells Fargo and Abacus

22   Insurance Services, Inc.  (Dkt. No. 1-12.)  NAS filed a Notice of

23   Removal, removing this case to federal court based on diversity

24   jurisdiction on the basis that Abacus Insurance Services, Inc. was

25   a nonexistent entity and that all other parties were diverse.  (See

26   Notice of Removal.)

27       Illegal Aliens filed a FAC correcting the name of the Abacus

28   defendant, but retaining the original four causes of action.  The

3

FAC asserts only two causes of action against Abacus and Wells
Fargo: the first cause of action for breach of contract, and the
fourth cause of action for negligence.  The FAC alleges that Wells
Fargo and Abacus hold themselves out as experts in the field of
insuring motion picture productions, and that pursuant to both
defendants' advice and guidance, Illegal Aliens purchased the two
insurance policies in question with the understanding that the
insurance would provide protection for any claims "incurred in the
normal and ordinary course" of making the Film.  (FAC ¶¶ 21-22.)
Illegal Aliens alleged that Abacus and Wells Fargo had a "special
relationship" with Illegal Aliens and thus owed Illegal Aliens a
"special duty" to offer advice about insurance coverage and to
ensure that Illegal Aliens was adequately insured.  (Id. ¶ 23.)  If
the insurance policies did not in fact cover the indemnification of
Illegal Aliens in the personal injury-related suits, then Illegal
Aliens alleges that Wells Fargo and Abacus breached that special
duty.  (Id. ¶ 24.)

     Wells Fargo and Abacus have filed separate motions to dismiss,
requesting the Court dismiss with prejudice the sixth cause of
action.  (Dkt. Nos. 28, 32.)  Illegal Aliens has filed a motion to
remand this case back to Los Angeles Superior Court.  (Dkt. No.
26.)

**II.  LEGAL STANDARD**

     **A.  Motion to Remand**

     Diversity jurisdiction under 28 U.S.C. § 1332 requires
complete diversity of the parties; however, removal is proper
despite the presence of a non-diverse defendant when that defendant
was fraudulently joined.  Fraudulent joinder is a "term of art"

4

1  courts use to describe a non-diverse defendant who has been joined
2  to an action for the sole purpose of defeating diversity.  McCabe
3  v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).  A court
4  will disregard such a "sham" defendant for the purposes of
5  determining diversity if it is "obvious according to the settled
6  rules of the state" that the plaintiff has failed to state any
7  cause of action against the defendant in question.  Morris v.
8  Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir.2001).
9       The "strong presumption against removal jurisdiction" means
10 that the party asserting the fraudulent joinder bears the burden of
11 proof.  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir.
12 1988).  The court should remand the case unless the moving party
13 can show fraudulent joinder by clear and convincing evidence.
14 Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206
15 (9th Cir. 2007).  If there is a "non-fanciful possibility" that the
16 plaintiff can state a claim against the non-diverse defendant, then
17 the court must remand the case.  Macey v. Allstate Prop. & Cas.
18 Ins. Co., 220 F. Supp. 2d 1116, 1118 (N.D. Cal. 2002).
19      **B.  Motion to Dismiss**
20      A 12(b)(6) motion to dismiss requires the court to determine
21 the sufficiency of the plaintiff's complaint and whether or not it
22 contains a "short and plain statement of the claim showing that the
23 pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under
24 Rule 12(b)(6), a court must (1) construe the complaint in the light
25 most favorable to the plaintiff, and (2) accept all well-pleaded
26 factual allegations as true, as well as all reasonable inferences
27 to be drawn from them.  See Sprewell v. Golden State Warriors, 266
28 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d

1187 (9th Cir. 2001); <u>Pareto v. F.D.I.C.</u>, 139 F.3d 696, 699 (9th
Cir. 1998).

In order to survive a 12(b)(6) motion to dismiss, the
complaint must "contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Bell Atl. Corp.
v. Twombly</u>, 550 U.S. 544, 570 (2007)). However, "[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.
Dismissal is proper if the complaint "lacks a cognizable legal
theory or sufficient facts to support a cognizable legal theory."
<u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th
Cir. 2008); <u>see also</u> <u>Twombly</u>, 550 U.S. at 561-63 (dismissal for
failure to state a claim does not require the appearance, beyond a
doubt, that the plaintiff can prove "no set of facts" in support of
its claim that would entitle it to relief). A complaint does not
suffice "if it tenders 'naked assertion[s]' devoid of 'further
factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550
U.S. at 556). "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
<u>Id.</u> The Court need not accept as true "legal conclusions merely
because they are cast in the form of factual allegations." <u>Warren
v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003).

**III.  DISCUSSION**

   **A.  Motion to Remand**

   Illegal Aliens moves for the Court to remand this case back to
state court, arguing that Abacus is a non-diverse defendant and

1   that Abacus was not fraudulently joined.  Illegal Aliens is

2   incorporated in California, and both parties agree that Abacus is

3   the only defendant who is a citizen of California for diversity

4   purposes.  The two causes of action asserted against Abacus are for

5   (1) breach of contract, and (2) negligence.

6        As for the breach of contract claim, Illegal Aliens has not

7   stated a claim against Abacus because Abacus was not a party to the

8   insurance contracts.  It is unclear whether Abacus had any direct

9   relationship with Illegal Aliens such that they could have a

10  contract to begin with, and the only contract alleged in the FAC

11  are the insurance contracts.  Abacus is not a party to the

12  insurance contracts.  Furthermore, "[u]nder California law, an

13  insurance agent cannot be held liable for breach of contract . . .

14  because he is not a party to the insurance contract." Minnesota

15  Mut. Life Ins. Co. v. Ensley, 174 F.3d 977, 981 (9th Cir. 1999)

16  (citing  Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566 (1973)).  Based

17  on what the Court can discern from the FAC, under California law,

18  Illegal Aliens cannot state a claim for breach of contract against

19  Abacus.

20       As for the negligence claim, here Illegal Aliens has stated

21  sufficient facts to support a possible claim.  The FAC alleges that

22  Abacus was engaged by Illegal Aliens and was acting "on behalf of"

23  Illegal Aliens.  (Compl. ¶ 5.)  Abacus, on the other hand, argues

24  that it was in fact an agent of NAS and was not an agent of Illegal

25  Aliens.  Under California law, "where the agent contracts in the

26  name of the insurer and does not exceed that authority, the insurer

27  is liable and not the agent." Briano v. Conseco Life Ins. Co., 126

28  F. Supp. 2d 1293, 1298  (C. D. Cal. 2000)(citations omitted).  The

insurer is responsible for the acts of the agent within the scope
of his agency.  Lippert v. Bailey, 241 Cal. App. 2d 376, 382
(1966).  An agent of an insurance company is generally immune from
suits brought by claimants for actions taken while the agent was
acting within the scope of its agency.  Icasiano v. Allstate Ins.
Cos., 103 F. Supp. 2d 1187, 1189 (N.D. Cal. 2000).

However, it is an "established rule that if a dual agency
exists, the law does not foreclose recovery by the insured." Id.
(citation and quotation marks omitted).  "Under California law, a
'dual-agent' theory requires that the insurance agent act on behalf
of the insured in some way beyond his or her capacity as an agent
for the insurer." Good v. The Prudential Insurance Company of
America, 5 F. Supp. 2d 804, 808 (N.D. Cal.1998).  "An insurance
agent cannot be a dual agent unless he or she is either an
independent broker or has a long-term, special relationship with
the insured." Id. (citation and internal quotations omitted).  The
"special duty" exception arises where an insurance agent "assume[s]
a greater duty toward his insured by misrepresenting the policy's
terms or extent of coverage." Paper Savers, Inc. v.
Nacsa, 51 Cal. App. 4th 1090, 1097 (1996).  However, a lone
allegation that the insurance agent had superior knowledge of his
insurance products and that the agent led the plaintiff to believe
he was acting in his best interests is insufficient to establish a
dual-agent relationship.  Good, 5 F. Supp. 2d at 808.

Abacus argues that Illegal Aliens has not shown that Abacus
had a duty of care towards Illegal Aliens separate from the duty
NAS owed to Illegal Aliens.  See, e.g. Charlin v. Allstate Ins.
Co., 19 F. Supp. 2d 1137, 1140-44 (C.D. Cal. 1998) (concluding

8

joinder of agent was fraudulent when plaintiff failed to alleged
that the supposed "dual agent" had acted beyond capacity for the
insurer, that he was independent broker, or that he had
longstanding relationship with the plaintiff).  In response,
Illegal Aliens cites to a line of California cases stemming from
Westrick v. State Farm Insurance, 137 Ca. App. 3d 685 (1982).
Illegal Aliens argues that an insurance agent, even if it is not a
dual agent, may owe a duty to the insured where the insured had a
specific request for a particular type or extent of coverage.
Abacus also cites to a federal case, Macey v. Allstate Prop. & Cas.
Ins. Co., 220 F. Supp. 2d 1116 (N.D. Cal. 2002), as lending support
to this principle.

  This is a close case.  The Westrick and Macey cases are not
exactly factually analogous, as in those cases the plaintiffs
alleged that they had issued very specific inquiries as to whether
a particular item was covered, namely specific automobiles, and the
defendant agents had assured plaintiffs that their policies
extended to those particular automobiles.  See Macey, 220 F. Supp.
2d at 1120 ("Prior to his car accident, [plaintiff] specifically
requested coverage for his 1997 Saab.  In response to his specific
inquiry and with full knowledge that his July payment was past due,
[defendant agents] assured plaintiff that the 1997 Saab was
insured.").  Here, Illegal Aliens states that it was seeking
coverage for all types of claims incurred during the course of
making the Film, a much more general request.  However, Illegal
Aliens further alleges that Abacus held itself out as an expert in
procuring this type of production insurance, and further that

1   Abacus asked questions of Illegal Aliens where Illegal Aliens

2   conveyed the scope of its production.

3        Although the facts alleging a "special duty" are sparse, the

4   Court cannot say definitively that Abacus did not owe a separate

5   duty of care towards Illegal Aliens.  Illegal Aliens argues that

6   Abacus had a "special duty" to Illegal Aliens because it held

7   itself out as an expert in insurance for film production. Although

8   this case is not as clear as the <u>Westrick</u> and <u>Macey</u> cases, the

9   burden to show removal jurisdiction is a heavy one.  Accordingly,

10  the Court concludes that there is a "non-fanciful" possibility that

11  Abacus may be liable to Illegal Aliens under the negligence claim.

12       **B.   Defendants Abacus and Wells Fargo's Motions to Dismiss**

13       Because the Court finds that Abacus is not a sham defendant

14  and thus that it should remand this case back to state court, the

15  motions to dismiss are therefore moot.

16  **IV.   CONCLUSION**

17       For the reasons stated above, the Motion to Remand is GRANTED.

18  Therefore, the Motions to Dismiss are DENIED as MOOT.

19

20  IT IS SO ORDERED.

21

22

23  Dated: April 10, 2015

24                                 DEAN D. PREGERSON
                                   United States District Judge

25

26

27

28